## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TONY MEDICI**                                          **CIVIL ACTION**

**VERSUS**                                               **NO. 05-4465**

**JO ANNE B. BARNHART,**                                 **SECTION "I" (3)**
**COMMISSIONER OF SOCIAL**
**SECURITY ADMINISTRATION**

## REPORT AND RECOMMENDATION

Plaintiff, Tony Medici, seeks judicial review pursuant to 405(g) of the Social Security Act (the "Act") of the final decision of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for benefits under the Social Security Act.  42 U.S.C. § 405(g) *et seq*. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B). Plaintiff's appeal was submitted on memoranda and the Administrative Record of the proceedings before the Commissioner.

Considering the memoranda, administrative record, and the applicable law, for the reasons set forth in the captioned report below, the undersigned United States Magistrate Judge RECOMMENDS that the Commissioner's Motion for Summary Judgment be DENIED, the Commissioner's decision be VACATED and the case REMANDED for further proceedings consistent with this report and findings.

## I. PROCEDURAL BACKGROUND

1

On October 15, 2003, the plaintiff, Tony Medici ("Medici"), filed an application for disability benefits, alleging an onset date of August 17, 2001 and inability to work due to neck, back and arm injury.[1]   On November 20, 2003, plaintiff's claim was denied and, on January 19, 2004, he filed a timely request for administrative hearing.[2]  Pursuant to the January 28, 2005 hearing, the Administrative Law Judge, ALJ Penny M. Smith, determined that Medici was not disabled and thus ineligible for Disability Insurance Benefits and  Supplemental Security Income payments.[3]

The ALJ found that plaintiff, a 35-year-old individual with a 10th grade education (Special Education), has cervical degenerative disc disease, lumbar disc displacement, status-post open reduction internal fixation, right humeral fracture and status-post removal of infected right humeral plate.  The aforesaid impairments were considered "severe" within the meaning of the Regulations, but not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  In this regard, ALJ Smith specifically found plaintiff's arm, neck and back impairments did not result in significant limitation in range of motion, muscle weakness, sensory or reflex loss so as to meet or equal Listing 1.00.[4]  Based upon the testimony of  Vocational Expert (VE) Patricia Knight, the

---

[1]*See* Leads Protective Filing Worksheet [Adm. Rec. 95]; Application for Disability Insurance Benefits dated October 15, 2003 [Adm. Rec. 96-98].

[2]*See* Disability Disability Determination and Transmittal (noting that claimant's condition prevents him from performing some types of work but before the end of 12 months, claimant should be able to perform work which is less physically demanding) [Adm. Rec. 75-80]; Request for Hearing by Administrative Law Judge [Adm. Rec. 81].

[3]*See* Transcript of January 28, 2005 Hearing [Adm. Rec. 25-73];  ALJ Penny M. Smith's May 27, 2005 Decision [Adm. Rec. 14-22].

[4]*See* ALJ Smith's Decision [Adm. Rec. 16].

ALJ found that Medici was unable to perform any of his past relevant work as welder's helper, a roustabout or a furniture mover, all of which required heavy exertion.  Additionally, the ALJ determined that claimant's acquired skills were industry specific and not transferable to jobs within the light and sedentary exertional category.[5]

The ALJ's  hypothetical question to the VE regarding work that the plaintiff was capable of performing included light level work with additional restrictions of no working at unprotected heights, no climbing ropes, ladders or scaffolding, reaching bilaterally but with reduced strength in the right dominant extremity and the limitation of reading only simple non-complex, short instructions.  In response, the VE identified unskilled light and sedentary level jobs in the regional and national economy which the plaintiff was capable of performing.[6]  Crediting the testimony of the vocational expert, the ALJ found that the plaintiff retains the functional capacity to perform a significant number of other jobs that exist in the regional and national economies and thus was not disabled or entitled to benefits under the Social Security Act.[7]

Plaintiff timely requested review of the Hearing Decision and Order.[8]  On review, the Appeals Council found no reason under the governing regulations to review the ALJ's decision and adopted it as the final decision of the Commissioner.[9]  On September 29, 2005,  Medici filed his complaint in the captioned matter pursuant to 42 U.S.C. § 405(g).  The parties agree that

---

[5] *Id.* [Adm. Rec. 19].

[6] *See* Transcript of January 28, 2005 Hearing [Adm.  Rec. 65].

[7] *See* ALJ Smith's Decision [Adm. Rec. 21-22].

[8] *See* Request for Review of Hearing Decision/Order [Adm. Rec. 9].

[9] *See* Notice of Appeals Council Action and Order dated July 22, 2005 [Adm. Rec. 5-8].

issues are amenable to summary disposition.[10]

## II. APPLICABLE LAW

### A.  Standards of Review

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.[11]  If the Commissioner's findings are supported by substantial evidence they must be affirmed.[12]

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.[13]  It is more than a scintilla, but may be less than a preponderance.[14]

A district court may not try the issues *de novo*, reweigh the evidence, or substitute its own judgment for that of the Commissioner.[15]  The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are

---

[10]*See* Plaintiff's Motion for Summary Judgment [Fed. Rec. Doc. No. 12]; and Commissioner's Reply Memorandum of Facts and Law [Fed. Rec. Doc. No. 15].

[11]*See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993); *Carriere v. Sullivan,* 944 F.2d 243, 245 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).

[12]*Martinez*, 64 F.3d at 173.

[13]*Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Spellman*, 1 F.3d at 360.

[14]*Id.*

[15]*Ripley*, 67 F.3d at 555; *Spellman,* 1 F.3d at 360; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

also permissible.[16]   However, the district court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.[17]  Any of the Commissioner's findings of fact which are supported by substantial evidence are conclusive.[18]

### B. Entitlement to Disability Benefits under the Act

To be considered disabled and eligible for disability benefits under the Act, the plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[19] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[20]  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[21]

The five-step procedure for making a disability determination under the Social Security Act was cogently restated in *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001):

---

[16]*See Arkansas v. Oklahoma*, 503 U.S. 91, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992).

[17]*Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

[18]*Ripley,* 67 F.3d at 555.

[19]42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[20]20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 (1995).

[21]*Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.[22]

The four elements of proof weighed in determining whether evidence of disability is substantial are: (1) objective medical facts;(2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history.[23]  "The Commissioner, rather than the courts, must resolve conflicts in the evidence."[24]

## C. Medical Opinions of a Treating Source

The ALJ must follow the Guidelines set forth in 96-2p to determine whether "controlling weight" should be given medical opinions of a "treating source." These guidelines are that: (1) the opinion must come from a "treating source;" (2) the opinion must be a "medical opinion;" (3)

---

[22]*Shave*, 238 F.3d at 594 (*quoting Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999)).

[23]*Martinez v. Chater,* 64 F.3d 172, 174 (5th Cir. 1995).

[24]*Id.*

the treating source's medical opinion must be "well supported" by "medically acceptable" clinical and laboratory techniques; and (4) even if supported, the opinion must not be inconsistent with other substantial evidence.  Even if the ALJ finds that the treating source's medical opinion is not entitled to controlling weight, that does not mean that the opinion can be rejected.  "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."  (SSR 92-2p)

The factors provided in 20 C.F.R. 404.1527 and 416.927 include: (1) Examining relationship; (2) Treatment relationship, length of treatment, frequency of examination, nature and extent of relationship; (3) Supportability; (4) Consistency; and (5) Specialization.[25]  Suffice it to say, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."[26]

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status."[27]  No special significance is accorded to the source of an opinion on issues reserved to the Commissioner, such as whether impairments singly or in combination meet

---

[25]Medical opinions of a specialist are generally accorded more weight than opinions of a source not a specialist. *Moore* v. *Sullivan,* 919 F.2d 901, 904 (5th Cir. 1990).  However, specialization is only one of several factors considered in the evaluation of medical opinions.

[26]*Shave v. Apfel,* 238 F.3d 592, 595 (5th Cir. 2001)(finding that the ALJ's limited rejection of opinions and medical records provided by treating physician justified by the character of records provided and supported by medical evidence from other treating an reviewing physicians); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

[27]*Moore v. Sullivan,* 919 F.2d at 905.

or equal the requirements for impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is known as the Listing of Impairments.  Where there is conflicting evidence regarding an issue reserved for the Commissioner, she has the responsibility to resolve that conflict.  The final decision on whether a claimant is disabled for purposes of the Act is a legal one rather than a medical one, and that determination may be made only by the Commissioner.[28]

In summary, the Commissioner has considerable discretion in assigning weight to medical opinions and is free to reject the opinion of any physician when the evidence supports a contrary conclusion.[29]

### III. ASSIGNMENTS OF ERROR

Plaintiff alleges that the ALJ erred in the following enumerated particulars, to wit: (1) selectively reviewing the medical evidence omitting reference to and inaccurately characterizing medical evidence which supported a finding of disability; (2) discounting plaintiff's credibility without appropriate factual support; (3) failing to consider the combined effect of the plaintiff's impairments on his ability to sustain gainful employment; (4) failing to correctly analyze the plaintiff's residual functional capacity; and (5) failing to recognize that the vocational evidence did not constitute "substantial evidence" within the meaning of the law.  Plaintiff concedes that he failed to establish disability from the original onset date (2001) up to the date of his subsequent

---

[28]*See Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989); *Moore,* 919 F.2d at 905.

[29]*See Greenspan*, 38 F.3d at 237(holding that the Act empowers the Commissioner to analyze the physicians' testimony and when substantial evidence supports the ALJ's decision to disregard a physician's conclusions, that basis alone is enough to survive judicial review); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Spellman*, 1 F.3d at 364; *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

injury (August 10, 2003), when plaintiff was hit by a car and sustained a fracture of the right/dominant humeral shaft .  Nevertheless, plaintiff highlights that, thereafter and throughout the seventeen (17) month period immediately predating the hearing, he suffered from chronic staph infections at the operative site, necessitating multiple incision/draining procedures in a hospital setting, plus a nine-day period of hospitalization in November, 2004.

The painful infection persisted and the procedure had to be repeated several times in December of  2004, prior to the decision to remove the implant/humeral plate in January of 2005 within weeks of the administrative hearing.  Plaintiff emphasizes that the ALJ failed to accurately characterize the aforesaid course of treatment and his chronic/recurring condition which well-exceeded the twelve-month minimum.  Additionally, plaintiff highlights that the ALJ failed to mention that he appeared at the hearing with his right arm in a sling.[30]

The Commissioner contends that substantial evidence supports the ALJ's decision.  The Commissioner does not specifically address the facts that the ALJ (1) reported a nine-day period of hospitalization to address the chronic infection at the humeral plate as a three-day period of hospitalization, (2) omitted any mention of December 20 and 21, 2003 hospital visits  for incision/drainage of abscess and (3) did not mention the November 3, 2004 X-ray, which revealed significant sclerotic changes cortical irregularities at the plate site suggesting inflammatory bone disease.  The Commissioner simply counters that an ALJ is not required to specifically discuss all medical evidence that was rejected and submits that the ALJ properly evaluated that limitations that resulted from plaintiff's broken arm and subsequent abscesses.   The Commissioner notes

---

[30] *See* Plaintiff's Memorandum in Support of Motion for Summary Judgment [Fed. Rec. Doc. No. 12].

that credibility determinations are peculiarly the province of the ALJ and that, conflicts in the evidence are for the Commissioner, not the courts, to decide.

As to the combined effects of the initial healing process, subsequent plate implantation and following difficulties with recurrent abscesses eventually necessitating plate removal, the Commissioner contends that the ALJ properly determined that the plaintiff's impairments did not prevent him from working.  The Commissioner further argues that the plaintiff has not shown that periods during which he experienced complications/abscesses rendered him incapable of holding a job.

## IV.  ANALYSIS

### A. Selective Discussion of the Medical Evidence

The ALJ determined that the plaintiff had "severe" impairments and discussed certain medical records post-dating June of 2003 regarding  plaintiff's medical condition as follows, to wit:

> The medical evidence indicates that the claimant has cervical degenerative disc disease; lumbar disc displacement; status-post open reduction internal fixation, right humeral fracture; and status-post removal of infected right humeral plate, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P. Regulations No. 4.  The claimant's arm, neck and back injuries have not resulted in significant limitation in range of motion, muscle weakness, sensory or reflex loss, as required to meet or equal any impairment listed in section 1.00.
>
> * * *
>
> By June 5, 2003, Dr. Watermeier determined that the claimant had failed conservative treatment and recommended surgical intervention (Exhibit 3F).
>
> On August 10, 2003, the claimant was hit by a car while walking.  Radiography revealed a fracture of the humeral shaft.  The claimant underwent open reduction internal fixation and tolerated this procedure well (Exhibit 4F).
>
> On October 8, 2003, the claimant returned for a follow-up visit with Dr.

Watermeier and reported that he was involved in a recent automobile accident that fractured his right humerus, and he underwent an open reduction internal fixation. At this point, the claimant's cervical spine and lumbar spine were found to be the same since the last visit, and Dr. Watermeier determined that surgical intervention was no longer recommended.  Dr. Watermeier administered trigger point injections, placed the claimant on home exercise and prescribed medication.

On November 8, 2004, the claimant was admitted to Leonard J. Chabert Medical Center due to developing an abscess on this right arm and was placed on a would VAC.  On November 11, 2004, the claimant was discharged in good condition. On January 6, 2005, the claimant underwent removal of [the] right humerus plate due to infection and was released in good condition (Exhibit 7F).

* * *

The undersigned acknowledges that the claimant has severe impairments that cause some limitations on his ability to perform basic work activities.  Indeed, the assessment of the claimant's residual functional capacity allows for many of his subjective complaints and limitations....  [T]o the extent that the claimant alleges an inability to perform any significant work activities on a sustained basis, his allegations are found to be not fully credible when considered in the light of the entirety of the evidence of record.[31]

A review of the administrative record by the undersigned Magistrate Judge reveals that, for several years  prior to August 10, 2003, Dr. Watermeier had  treated Medici for lumbar and cervical spine conditions.   On July 16, 2003,  Dr. Watermeier (plaintiff's treating orthopaedic surgeon) determined that Medici was temporarily totally disabled from work as a welder's helper/roustabout (heavy labor) due to his lumbar and cervical spine conditions and that plaintiff's prognosis for recovery was poor.[32]   Anterior fusions were recommended at level C5-6 and  at L5-S1.[33]

On August 10, 2003,  Medici was struck by a car while he was walking along the

---

[31]See Decision of ALJ Penny M. Smith dated August 27, 2005 [Adm. Rec. 16-19].

[32]See Orleans Orthopaedic Associates Clinic Note dated July 16, 2003 [Adm. Rec. 135-136].

[33]See Orleans Orthopaedic Associates Clinic Note dated March 13, 2003 [Adm. Rec. 141-142].

roadside.  He was transported to Terrebonne General Medical Center by EMS on a stretcher.

Plaintiff presented left hand abrasions, right humerus deformity, lacerations to his upper arm and

scalp which were stapled and superficial abrasions to his face, scalp, temple, hands, right shoulder

and

right knee which were cleansed and medicated.[34]   Claimant sustained a significant fracture of the

right arm.[35]   Radiology records revealed a fracture of the humeral shaft just distal to the mid

point, with about one bone width medial displacement of the distal humeral fragment.[36]

Plaintiff's right dominant arm was splinted and he was discharged with instructions to schedule

surgery and to return for staple removal in fourteen days.[37]

On August 12, 2003, plaintiff  reported to the Emergency Department of Leonard J.

Chabert Medical Center complaining of severe pain and swelling of his right arm.[38]   The

emergency physician's diagnosis at Chabert was similarly a broken right arm and multiple

abrasions.  A sling was applied to his right arm and Medici was advised to keep his arm elevated

and to follow up in orthopedics.  Plaintiff was also prescribed Vicodin.[39]

On August 17, 2003,  Medici returned to Terrebonne General complaining of severe right

---

[34] *See* Terrebonne General Medical Center and Emergency Room Physician's Records dated August 10, 2003 [173-178].

[35] *See id.*

[36] *Id.* at 178.

[37] *Id.* at 177.

[38] *See* Leonard J. Chabert Medical Center Progress Note dated August 28, 2003 [Adm. Rec. 198].

[39] *Id.* at 208.

arm pain and that he had twisted left leg that morning.  Plaintiff was out of his pain medications

and it was further noted that plaintiff had multiple healing abrasions.[40]  Plaintiff's right arm was

recasted and a sling was applied.[41]

Chabert Medical Center's progress notes dated August 28, 2003 state that Medici was

contacted to schedule surgery for August 29, 2003.  Plaintiff reported for pre-operative work up

on August 28, 2003.[42]    The next day, plaintiff was admitted for surgery.  An open reduction

internal fixation was performed, staples closed the incision and a splint was applied.[43]  Plaintiff

was discharged in good condition and prescribed Percocet for pain.   Medici was further advised

to keep his arm dry and in a sling.[44]

On September 1, 2003, Medici again presented to the Emergency Department at Chabert

Medical Center complaining of severe pain at the operative site and that he had run out of

Percocet since his surgery.[45]    The emergency physician's diagnosis was right arm pain and

Percocet was prescribed.[46]  On September 15, 2003, plaintiff reported to the orthopedic clinic for

_____

[40]*Id.* at 162.

[41]*Id.* at 164, 167.

[42]*See* Leonard J. Chabert Medical Center Emergency Department Record dated August 12,
2003 [Adm. Rec. 205].

[43]*See* Leonard J. Chabert Medical Center Status Authorization dated August 29, 2003 [Adm.
Rec. 197]; Operative Note dated August 29, 2003 (stating that ORIF procedure conducted 8-29-03
with teaching staff present for the entire procedure) [Adm. Rec. 196].

[44]*See* Leonard J. Chabert Medical Center Short-Stay Record dated August 29, 2003 [Adm.
Rec. 195].

[45]*See* Leonard J. Chabert Medical Center Emergency Department Record dated September
1, 2003 [Adm. Rec. 190].

[46]*Id.* at 191.

his follow up visit, staples were removed and he was instructed to return on October 15, 2003.[47]

Plaintiff's chart reflects that he called the clinic on October 6, 2003 for a refill on his pain

medication (Percocet) and that the prescription was called in to Eckerd Pharmacy.[48]

Plaintiff missed his post operative appointment scheduled for October 15, 2003 at Chabert

Medical Center and was later admitted to Terrebonne General Medical Center on December 20,

2003 with right arm pain and swelling.[49]  Medici stated that his arm "had been that way for

awhile" and that he was out of Vicodin and Soma.[50]  The clinical impression was abscess and the

physician ordered a  wound culture and an "incision and drainage" procedure.[51]  Radiology

records revealed an open reduction with internal plate and screw fixation of the transverse

fracture to the dominant right arm, with hardware appearing in near anatomic alignment;

however, the fracture incompletely healed.[52]  The wound cultures were positive for staph

infection.[53]  Plaintiff's right arm abscess was lanced, drained and packed.[54]  On December 21,

2003, plaintiff's pain had increased.  His wound was rechecked, irrigated and repacked.

---

[47]*See* Leonard J. Chabert Medical Center Orthopedic Clinic Records dated September 15, 2003 [Adm. Rec. 189].

[48]*See* Leonard J. Chabert Medical Center Progress Note dated October 6, 2003 [Adm. Rec. 188].

[49]*See* Terrebonne General Medical Center Records dated December 20, 2003 [Adm. Rec. 223].

[50]*Id.*

[51]*Id.* at 227.

[52]*Id.* at 228.

[53]*Id.* at 230.

[54]*Id.* at 228.

Antibiotics were ordered and plaintiff was instructed to return the next day for wound evaluation.[55]

On May 9, 2004, plaintiff went to Terrebonne General Medical Center's Emergency Room with nervousness and "the shakes" which started after taking Soma.  Medici stated that he had taken the medication because of chronic pain from the motor vehicle accident.[56]  The physician's impression was "adverse drug reaction" and his recommendation was to "stop using Soma" and "enrollment in [the] chronic pain clinic."[57]

Medical records further reflect that, on October 31, 2004, Terrebonne General Medical Center transferred plaintiff to Chabert Medical Center with a recurring staph infection of the right arm, noting that Medici needed to be evaluated by the orthopedist who affixed the humeral plate. Chabert Medical Center's admit notes dated November 2, 2004 indicate two prior infections at the wound site and that Terrebonne General's October 31, 2004 blood cultures were positive for staph infection.[58]  Progress notes indicate that plaintiff was prescribed Percocet for pain. Weakness was noted in the right upper extremity in addition to swelling and tenderness of the right biceps.[59]

Radiology findings dated November 3, 2004 were as follows:

---

[55]*Id.* at 239-40.

[56]*See* Terrebonne General Medical Center Emergency Physician Record dated May 9, 2004 [Adm. Rec. 256].

[57]*Id.* at 257-58.

[58]*See* Chabert Medical Center Physician's Progress Notes dated November 2, 2004 (noting "status-post ORIF" of the humerus done at Chabert and "repeated infections" of the right arm) [Adm. Rec. 293-295].

[59]*Id.* at 289-290.

Right Humerus (11/3/04):  There is a metallic plate with interlocking screws along the mid and distal humerus again noted.  There is no residual fracture line identified, but there is significant sclerotic changes and cortical irregularities at the plate site which raise the possibility of inflammatory bone disease.[60]

Plaintiff remained in the hospital from November 2, 2004 until November 11, 2004 for treatment and observation.  During the nine-day hospital stay, the orthopedic clinic was consulted to treat the abscess and repeat the incision and drainage procedure.  Plaintiff remained under observation in the hospital while his orthopedist considered removing the hardware from plaintiff's arm.  After incision and drainage of the abscess, a wound VAC was placed at the site of the incision.  Having followed the plaintiff's progress for more than a week, the Orthopedic Department determined Medici was ready for discharge and discontinuance of the wound VAC on November 10, 2004.

Plaintiff was discharged on November 11, 2004 with instructions to follow up on December 1, 2004 with Dr. Eschete in the Orthopedic Clinic.  In the interim, the plan was to leave the hardware in place electively while the infection was not present.  In addition to Lexapro, Vistaril and Keflex, plaintiff was prescribed Percocet (one to two every four to six hours as needed for pain).[61]

On November 19, 2004, plaintiff again reported to Chabert Medical Center's Emergency Department complaining of right arm pain and that he had run out of his pain medication.[62]  On

---

[60]*See* Chabert Medical Center Radiology Requisition and Findings dated November 3, 2004 [Adm. Rec. 287].

[61]*See* Chabert Medical Center Discharge Summary dated November 11, 2004 [Adm. Rec. 286].

[62]*See* Chabert Medical Center Emergency Department Record dated November 19, 2004 [Adm. Rec. 281].

16

December 28, 2004, plaintiff returned to the Chabert's Emergency Department complaining of continuing problems with his right arm infection. The diagnosis was recurring right arm pain secondary to abscess. Additional orders included prescription pain medication Percocet. Plaintiff's abscess was again aspirated for wound cultures and he was advised to follow up with the Chabert's Orthopedic Clinic in the morning.[63]

On December 29, 2004, plaintiff was seen in Chabert Medical Center's orthopedic clinic. The diagnosis was right arm infection and the physician's impression was that the humeral plate needed to be removed. Plaintiff was instructed to return on the following Monday and, in the interim, he was prescribed Keflex for the infection and Lortab for pain.[64] On January 3, 2005, plaintiff returned to the orthopedic clinic complaining of daily pain of varying intensity. Physical examination of his right arm revealed lateral swelling. The diagnosis remained unchanged and the plan was to continue the antibiotic regimen and to schedule the plate removal operation .[65]

On January 6, 2005, plaintiff underwent two surgical procedures, removal of the right humerus plate and incision and drainage of the right arm. Once the plate had been exposed, there was an obvious area of his draining sinus tract and frank purulence was easily expressed and sent to pathology for culture.[66] Plaintiff was discharged in stable condition and instructed to leave the

---

[63]*See* Chabert Medical Center Emergency Department Record dated December 28, 2004 [Adm. Rec. 278-280]; Procedure Progress Note dated December 29, 2004 (aspiration of abscess) [Adm. Rec. 275].

[64]*See* Chabert Medical Center Orthopedic Clinic Notes dated December 29, 2004 [Adm. Rec. 271].

[65]*See* Chabert Medical Center Orthopedic Clinic Notes dated January 3, 2005 [Adm. Rec. 270].

[66]*See* Chabert Medical Center Operative Report dated January 6, 2005 [Adm. Rec. 267-268].

wound dressings in place.  Prescription medications upon discharge included Vicodin for pain and antibiotic medication Keflex.[67]

On January 10, 2005, plaintiff returned to the orthopedic clinic for follow up.  The diagnosis was status-post humeral plate removal.  The wound dressing was changed and the packing was removed.  Plaintiff was placed on a ten-day course of Bactrim to combat the staph infection and Lortab was prescribed for pain.  Medici was instructed to return on January 19, 2005 for removal of the stitches.

Substantial medical evidence of record was not discussed by the ALJ – *i.e.*,  hospital and clinic records of Chabert Medical Center and Terrebonne General dating from August 10, 2003 to January 10, 2005.  Nevertheless, during this seventeen month period, plaintiff suffered from repeated or recurring chronic staph infections, pain and swelling at the operative site.  The abscess/pain condition persisted and continued to manifest itself on a repeated basis until the fracture was healed and the infected humeral plate and screws were removed in January of 2005, just prior to the administrative hearing.

During this seventeen month period, plaintiff's chronic pain condition was treated with antibiotics and ongoing prescription pain drug therapy including Lortab, Percocet and Vicodin.[68] The aforesaid pain medications are classified as Schedule II or III controlled narcotic substances, prescribed to address moderately severe pain.  All three prescription drugs frequently cause sedation, drowsiness and/or lethargy in ambulatory patients which is relieved by lying down.

---

[67]*See* Chabert Medical Center Short Stay Record dated January 6, 2005 [Adm. Rec. 265].

[68]*See* Claimant's Medication List dated January 28, 2005 (noting  "Lortab," "4 per day" prescribed for "pain" by "various doctors") [Adm. Rec. 115].

Additionally, skin rash or pruritus are among the noted adverse effects.[69]  Plaintiff's recurrent/chronic condition culminated in a nine-day hospital stay during which time his chronic abscess condition and skin rash (which had developed and spread from his groin to his lower abdomen)  were both treated.[70]

An ALJ is obliged to consider all the evidence. 20 C.F.R. § 404.1520 (2002); Soc. Sec. Ruling 96-7p (1996).  Decisions must be based on the record as a whole; the ALJ is not free to pick and choose only the evidence supporting a particular position. *See Loza*, 219 F.3d at 393; *Switzer v. Heckler*, 742 F.2d 382, 385-86 (5th Cir.1984).  Moreover, opinions of treating physicians must generally be accorded controlling weight unless for good cause shown an ALJ rejects or assigns less weight to the treating physician's opinion. Good cause may exist when the physician's statements are conclusory and brief, otherwise unsupported by the evidence, when the treating physician is not credible because he is "leaning over backwards to support the application for disability benefits," or when statements are unsupported by medically acceptable clinical, laboratory or diagnostic techniques. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir.2001) (*citing Greenspan,* 38 F.3d at 237);  *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir.2000).

The plaintiff's prescription drug therapy, multiple surgical procedures and hospitalizations addressing the recurrent abscess of his dominant right arm over the aforesaid seventeen month period was glossed over at best and selectively read at the worst.  Plaintiff's clinic, hospital and emergency department medical records from Chabert and Terrebonne General Medical Centers

---

[69]*See* Physician's Desk Reference (PDR) 2006 at pp. 350, 351  1114, 1115 and 3315.

[70]*See* Chabert Medical Center Progress Notes/Discharge Summary [Adm. Rec. 290, 285].

over the seventeen month period  at issue (August 10, 2003 to January 10, 2005) warrant some

investigation and some consideration as to whether plaintiff is entitled to an award based upon a

closed period of disability.

The undersigned Magistrate Judge notes that the aforesaid medical records raise some

question as to the plaintiff's non-compliance and whether any such non-compliance exacerbated

the chronically recurrent abscess/infection of his dominant right arm/humeral plate.  However,

there is no discussion of the medical treatment records at all and, concomitantly, no reference to

multiple emergency room visits for treatment, intermittent hospitalizations, multiple surgical

procedures and the steady course of sedative pain medications or their effect upon plaintiff's

employability and ability to sustain employment over the seventeen month period of time.  The

significant nine-day hospitalization at Chabert was in fact mentioned but re-characterized as a

brief two-day hospitalization period.

In summary, ALJ relied on selective portions of the medical record and selective portions

of plaintiff's hearing testimony.   Opinions and diagnoses relevant to the ALJ's proper assessment

of the severity of plaintiff's physical impairments and pain during the aforesaid period were

ignored.  The ALJ did not base her decision on the record as a whole.  Given the omissions, it

cannot be said that the facts of plaintiff's claim for a period of disability were fully and fairly

developed.  Accordingly, the ALJ's decision failed to comport with the applicable legal standards

when she failed to properly weigh the credibility of the omitted records, consider them in

conjunction with the rest of the relevant medical evidence made part of plaintiff's case, and then

perform a comparison of same with plaintiff's hearing testimony.[71]

---

[71] 20 C.F.R. § 416.927 & SSR 96-2p.

Because the ALJ erred by not properly addressing the substantial objective evidence of record, and by not applying the correct legal standard in assessing the severity of all of plaintiff's claimed impairments, the decision should be vacated and the case remanded for further consideration.

### B. Residual Functional Capacity

The Social Security regulations and rulings provide guidance for the ALJ in determining a claimant's RFC. See 20 C.F.R. §§ 404.1545, § 416.945; and SSR 96-8p. Specifically, the regulations provide that an RFC is "an assessment based upon all of the relevant evidence." 20 C.F.R. § 404.1545(d). In addition, SSR 96-8p provides that the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure the file contains sufficient evidence to assess the RFC." SSR 96-8p. The RFC assessment must always consider and address *all* medical source opinions. *Id.* SSR 96-8p states that an ALJ's assessment of claimant's RFC must contain a "thorough discussion of the objective medical evidence," as well as discuss how, "any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Social Security Ruling 96-8p provides that residual functional capacity "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." "The RFC assessment is a function-by- function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* (*quoting* 61 Fed.Reg. 34474-01 (July 2, 1996)). Therefore, inherent in every residual functional capacity assessment is a finding that the claimant can perform work on a regular and continuing basis, and

21

thus can maintain employment.  *See* 20 C.F.R. S 404.1545(b); *see also Dunbar v. Barnhart*, 223 F. Supp. 2d 795, 802 (W. D. Tex.2002).  The Fifth Circuit considers these regulations and rulings to be relevant to any decision.  *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir.2001).[72]

The ALJ failed to comply with the applicable regulations discussed above.  It does not appear that plaintiff's evidence of these other physical impairments/limitations was so slight as to warrant a presumption of non-disability without a full evaluation of all vocational factors, including an evaluation of whether the combined effects of all physical impairments and their attendant limitations (exertional and non-exertional) make the impairments "severe."[73]  The ALJ's findings as to severity make no reference whatsoever to the clinically documented chronic recurrent abscess of plaintiff's right dominant humerus secondary to staph infection and its effect on plaintiff's ability to work.[74]

The regulations also require that the ALJ consider the "type, dosage, effectiveness, and

---

[72]*See also Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002) (holding that the ALJ erred in failing to determine whether Watson was capable not only of obtaining employment, but also maintaining it).  The Fifth Circuit's decision in *Watson* required the ALJ to make a finding as to the claimant's ability to maintain a job for a significant period of time, notwithstanding the exertional, as opposed to non-exertional (*e.g.*, mental illness) nature of the claimant's alleged disability.  The rule of *Watson*, necessitating a separate finding of whether the claimant is capable of maintaining employment, is implicated in a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms. *See also Frank v. Barnhart,* 326 F.3d 618 (5th Cir. 2003) (noting, on petition for rehearing, that usually the issue of whether the claimant can maintain employment for a significant period of time is subsumed in the analysis regarding the claimant's ability to obtain employment but recognizing, nevertheless, that an occasion may arise, as in *Watson*, where the medical impairment, and the symptoms thereof, are of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required).

[73]Because the ALJ's RFC analysis did not take into consideration plaintiff's physical impairments/ limitations and based on the ALJ unsupported finding at step two that these limitations were not severe (albeit *sub silentio*), the RFC assessment must be revisited.

[74]*See* ALJ's Decision dated May 27, 2005 [Adm. Rec. 20].

side effects of any medication" that the claimant takes or has taken to alleviate pain or other

symptoms."[75]   The ALJ's failure to consider or discuss the adverse effects, if any, of continuing

pain medication therapy (Percocet, Lortab and Vicodin) on the plaintiff's employability

constitutes  error.[76]   It is well-recognized that an ALJ has the responsibility to " 'develop the facts

fully and fairly relating to the applicant's claim,'" and, if this responsibility is not met, the decision

is not "'substantially justified.'"[77]

Here, because the ALJ failed to properly assess the severity of plaintiff's non-exertional

and exertional impairments according to the applicable legal standards, her assessment of

plaintiff's RFC became skewed.[78]   Accordingly, due to the errors in failing to consider the record

as a whole, the Court finds the determination of plaintiff's RFC is erroneous and the determination

not supported by substantial evidence.

## V. CONCLUSION

The undersigned Magistrate Judge is convinced that the ALJ overlooked uncontroverted

evidence that may indicate that plaintiff is entitled to disability benefits for the closed period

beginning on August 10, 2003 (the date he was struck by a vehicle) and ending on or about

January 28, 2005 (the date of the administrative hearing).   As discussed above, plaintiff sustained

a significant fracture of his right dominant humerus which necessitated surgery, *i.e.*, an open-

reduction internal fixation with plate and screws.  Additionally, during the aforesaid period

---

[75]20 C.F.R. S 404.1529(c)(3)(iv); *see also Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999).

[76]*See Crowley*, 197 F.3d at 199.

[77]*Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir.2001) (*quoting Ripley*, 67 F.3d at 557); *see also Newton v. Apfel*, 209 F.3d 448 (5th Cir.2000).

[78]*See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1520 and 404.1561.

plaintiff (1) required emergency room treatment on no less than ten occasions, (2) was hospitalized on one occasion for a nine-day period, (3) had two surgeries on his right dominant arm [ORIF of the right dominant humerus and removal of the infected plate removal] and (4) numerous operative procedures involving incision and drainage of the staph infected operative site.  With respect to pain, there is substantial evidence that plaintiff was placed upon a significant regimen of antibiotic and prescription pain medication at regular intervals if not throughout the pertinent period.   There was also a recommendation that the plaintiff attend a chronic pain clinic.

Remand is recommended to permit the ALJ to review the evidence at issue in the first instance and to articulate specific findings regarding plaintiff's right arm condition and medical treatment during the aforesaid closed period, together with all other substantial medical evidence

of record.  This Court's recommendation recognizes that the Commissioner has the exclusive prerogative to weigh evidence and resolve conflicts, and further acknowledges that judicial review is both highly deferential to the Commissioner and limited in scope. The Court does not purport to direct a particular ultimate outcome as to this closed period upon remand. Therefore, upon remand, the Commissioner will be free to re-examine all issues, including the severity of all of the plaintiff's physical impairments.

## VI. RECOMMENDATION

Based upon the foregoing discussion of the issues, evidence and the law,  and because plaintiff's points of error discussed above should be sustained, IT IS RECOMMENDED that the Commissioner's decision be VACATED and the case REMANDED for further proceedings consistent with this report and findings.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such party, except upon grounds of plain error or manifest injustice, from attacking on appeal the factual findings and legal conclusions adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir.1996) (*en banc*).

New Orleans, Louisiana, this <u>20th</u> day of November, 2006.


DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE